IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT ITO FARM, INC., ET AL. | CIV. NO. 14-00511 BMK |
| Plaintiffs, | ORDER (1) GRANTING ALIKA ATAY, LORRIN PANG, MARK SHEEHAN, BONNIE MARSH, LEI`OHU RYDER, AND SHAKA MOVEMENT'S MOTION TO INTERVENE AND (2) DENYING MOMS ON A MISSION HUI, MOLOKA`I MAHI`AI, GERRY ROSS, AND CENTER FOR FOOD SAFETY'S MOTION FOR LEAVE TO INTERVENE |
| vs. | |
| COUNTY OF MAUI, | |
| Defendant. | |

ORDER (1) GRANTING ALIKA ATAY, LORRIN PANG, MARK SHEEHAN, BONNIE MARSH, LEI`OHU RYDER, AND SHAKA MOVEMENT'S MOTION TO INTERVENE AND (2) DENYING MOMS ON A MISSION HUI, MOLOKA`I MAHI`AI, GERRY ROSS, AND CENTER FOR FOOD SAFETY'S MOTION FOR LEAVE TO INTERVENE

Before the Court are two Motions to Intervene: (1) Alika Atay, Lorrin Pang, Mark Sheehan, Bonnie Marsh, Lei`ohu Ryder, and Shaka Movement's (collectively, "Shaka") Motion to Intervene (Doc. 37) and (2) Moms on a Mission (MOM) Hui, Moloka`i Mahi`ai, Gerry Ross, and Center for Food Safety's (collectively, "CFS") Motion for Leave to Intervene (Doc. 40).[1] The Proposed Intervenors seek intervention as of right under Federal Rules of Civil Procedure ("FRCP") Rule 24(a)(2), or alternatively, permissive intervention under FRCP Rule

---

[1] Collectively, Shaka and CFS will be referred to as "Proposed Intervenors."

24(b)(2). The Court heard these Motions on December 12, 2014. After careful consideration of the Motions, the supporting and opposing memoranda, and the arguments of counsel, the Court GRANTS Shaka's Motion to Intervene (Doc. 37) and DENIES CFS's Motion for Leave to Intervene (Doc. 40).

FACTUAL BACKGROUND

Plaintiffs[2] bring this action to enjoin and invalidate a County of Maui Ordinance regarding genetically engineered crops. The Ordinance was approved by ballot initiative on November 4, 2014.

Under Article 11 of the Charter of Maui, voters have "initiative power," which is the power to propose ordinances to the County Council. Maui County Charter ("MCC") § 11-1(1). Any five qualified voters may commence initiative proceedings by filing an affidavit with the County clerk, and those five voters constitute the "petitioners' committee." MCC § 11-2(1). The committee is issued petition blanks, which "must be signed by not less than twenty percent (20%) of the total number of voters who cast ballots in the last mayoral general election." MCC § 11-3(2).

All papers forming the initiative petition must be filed with the County

---

[2] Plaintiffs are Robert Ito Farm, Inc.; Hawaii Farm Bureau Federation, Maui County; Moloka`i Chamber of Commerce; Monsanto Company; Agrigenetics, Inc.; Concerned Citizens of Moloka`i and Maui; Friendly Isle Auto Parts & Supplies, Inc.; New Horizon Enterprises, Inc. dba Makoa Trucking and Services; and Hikiola Cooperative.

clerk within 180 days after the committee files their affidavit. MCC § 11-4(1). Upon a determination by the County clerk that the petition is "sufficient," the County Council "shall promptly consider the proposed ordinance." MCC §§ 11-4(1), 11-6(1). If the Council fails to enact a proposed ordinance within sixty days after the petition was determined to be sufficient, the proposed ordinance shall be submitted "to the voters of the county at the next general election." MCC § 11-6(1). If a majority of the voters vote in its favor, the ordinance "shall be considered enacted upon certification of the election results." MCC § 11-7.

With respect to the Ordinance in this case, Movants Alika Atay, Lorrin Pang, Mark Sheehan, Bonnie Marsh, and Lei`ohu Ryder formed the petitioners' committee. (Savitt Decl'n ¶ 5.) On April 7, 2014, the committee submitted the proposed Ordinance, entitled "A Bill Placing a Moratorium on the Cultivation of Genetically Engineered Organisms," to the County clerk. (Id. ¶¶ 2, 6.) On June 6, the County clerk determined that the proposed Ordinance was sufficient. (Id. ¶ 8.) After hearing public testimony on the Ordinance, the County Council's Policy and Intergovernmental Affairs Committee determined it would take no action on the Ordinance. (Id. ¶¶ 9, 12.) The County clerk then submitted the Ordinance to the voters at the general election held on November 4, 2014, where the majority of voters voted in favor of the Ordinance. (Id. ¶ 12; Shaka Motion at 7.)

On November 12, 2014, the five individuals comprising the petitioners' committee, along with Shaka Movement, filed a Complaint against the County, Monsanto Company, and Dow Agrosciences LLC in state court. (Shaka Motion Ex. C.) They sought declaratory relief that the "County is obligated to proceed forward to properly and timely implement the GMO Bill" and that "Plaintiffs shall be permitted to assist and participate in the County's implementation of the GMO bill, and the County shall consult the Plaintiffs with respect to the GMO Bill's implementation." (Shaka Motion Ex. C at 10.)

The next day, on November 13, 2014, Plaintiffs filed the Complaint in this case against the County of Maui. (Complaint.) Plaintiffs assert that the Ordinance "violates federal, state and local law" and pray for a declaration that the Ordinance is invalid and an injunction enjoining the County from enforcing the Ordinance. (Complaint ¶ 3 & Prayer for Relief.)

On November 17, 2014, Plaintiffs and the County stipulated that the County be "enjoined from publishing or certifying the Ordinance, enacting, effecting, implementing, executing, applying, enforcing, or otherwise acting upon the Ordinance, and the Ordinance shall not be published, certified as an Ordinance, enacted, effected, implemented, executed, applied, enforced, or otherwise acted upon until March 31, 2015." (Doc. 26 at 4.)

On November 21, 2014, the present Motions to Intervene were filed. (Docs. 37 at 40.) The Shaka Intervenors consist of Shaka Movement and the five individuals who constituted the petitioners' committee and actively pursued their initiative power under Article 11 of the Maui County Charter. The five individuals reside and work where genetically modified organism ("GMO") operations and practices take place. (Savitt Decl'n ¶ 5.) They, along with Shaka Movement's board of directors, maintained a strong presence during public hearings on the Ordinance. (Id. ¶ 10.) They also reached out to the community through events featuring various speakers, two marches, door-to-door campaigning, radio and television advertising, educational mailings, the use of social media networks, and volunteers who raised awareness and support for the Ordinance. (Id. ¶ 14.)

The CFS Intervenors include Gerry Ross, an organic farmer who faces the risk of pesticide damage and transgenic contamination of his organic crops. (Doc. 40 at 11; Ross Decl'n ¶¶ 5-6.) Moloka`i Mahi`ai is a group of Moloka`i farmers and food producers whose property interests and livelihoods are affected by Plaintiffs' GMO crop operations. (Doc. 40 at 11; Buchanan Decl'n ¶¶ 3-19.) The MOM Hui consists of a group of Moloka`i mothers "who advocate for protecting the health, safety, and well-being of all children." (Doc. 11-12; Ritte Decl'n ¶¶ 5-6.) The Center for Food Safety is a public interest group dedicated to addressing the

impacts of industrial agriculture and assists state and local governments in addressing the impacts of GMO crops. (Doc. 40 at 12-13; Lukens Decl'n ¶¶ 4-12.) The Center for Food Safety also provided assistance to the voter initiative, convened a coalition of farmers, residents, and small businesses, and launched a website to educate voters about the Ordinance. (Doc. 40 at 14-15; Lukens Decl'n ¶¶ 19-22.)

## DISCUSSION

I. INTERVENTION AS OF RIGHT

FRCP Rule 24(a)(2) provides in relevant part that,

> On timely motion, the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 is to be liberally construed in favor of the party seeking intervention, Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003), because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." Wilderness Soc'y. v. U.S. Forest Service, 630 F.3d 1173, 1179 (9th Cir. 2011).

When analyzing a motion to intervene as of right under FRCP Rule 24(a)(2), the Court applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Wilderness Soc'y, 630 F.3d at 1177. In applying this test, "courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). Because Plaintiffs do not contest the timeliness of the motions to intervene, the Court addresses the remaining three factors.

> A. Significantly Protectable Interests

An applicant seeking intervention has a "significantly protectable interest" in an action if:

> (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant. The "interest" test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the "interest" test directs courts to make a practical, threshold inquiry, and is primarily a practical

7

> guide to disposing of lawsuits by involving as many
> apparently concerned persons as is compatible with
> efficiency and due process.

In re Estate of Ferdinand E. Marcos Human Rights Litig., 536 F.3d 980, 984-85 (9th Cir. 2008) (quoting S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002)).

The Shaka Intervenors assert they have significantly protectable interests because they were the original proponents and drafters of the Ordinance and actively participated in the legislative and political process relating to the Ordinance. (Doc. 37 at 12; Savitt Decl'n ¶ 15.) They also reached out to Maui residents by hosting events featuring various speakers, two marches, door-to-door campaigning, radio and television advertising, educational mailings, and the use of social media. (Doc. 37 at 13; Savitt Decl'n ¶ 14.) Additionally, the Shaka Intervenors are plaintiffs in a related previously filed state court action, in which they seek a declaration that the Ordinance is valid and request permission to assist, participate, and consult with the County in implementing the Ordinance. (Doc. 37 at 13; Ex. C.) That lawsuit names the County of Maui and Monsanto Company (one of the Plaintiffs in this case) as Defendants. The CFS Intervenors assert their health and property interests are being impaired by Plaintiffs' GMO crop operations. (Doc. 40 at 11.)

The Court finds that the Shaka and CFS Intervenors each assert

significantly protectable interests. Nw. Forest Resource Council v. Glickman, 82 F.3d 825, 837-38 (9th Cir. 1996) (noting that public interest groups "directly involved in the enactment of the law . . . out of which the litigation arose" are allowed to intervene); Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) (a "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported"). Additionally, where proposed intervenors assert an interest in environmental actions affecting their members, courts have generally found a significantly protectable interest to exist for purposes of intervention as of right. See e.g., Am. Farm Bureau Fed'n v. EPA, 278 F.R.D. 98, 106 (M.D. Pa. 2011) (holding environmental group whose members used the waters of Chesapeake Bay for aesthetic and recreational purposes had a significantly protectable interest in litigation challenging EPA Clean Water Act restrictions); Cal. Dump Truck Owners Ass'n v. Nichols, 275 F.R.D. 303, 306-07 (E.D. Cal. 2011) (holding that environmental group whose members benefited from improved air quality under regulations restricting truck emissions had sufficient interest in litigation attacking those regulations for purposes of intervention).

      B.     Disposition of the Action and Impairment of Interests

The analysis for intervention as of right also requires the Court to consider whether the applicant is "so situated that the disposition of the action may

as a practical matter impair or impede its ability to protect that interest." Wilderness Soc'y, 630 F.3d at 1177. The Court's analysis focuses on the "future effect pending litigation will have" on the intervenors' interests. Parker v. Nelson, 160 F.R.D. 118, 122 (D. Neb. 1994). Notably, "the question of impairment is not separate from the existence of an interest," Natural Res. Defense Council, Inc., v. U.S. Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir. 1978), and "generally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest." Jackson v. Abercrombie, 282 F.R.D. 507, 517 (D. Haw. 2012) (citing Lockyer v. United States, 450 F.3d 436, 442 (9th Cir. 2006).

Although Plaintiffs contest whether the Shaka and CFS Intervenors have significantly protectable interests, they do not challenge whether the outcome of this action may impair their interests. Having found Proposed Intervenors do have significantly protectable interests in the subject of this action, it follows that the invalidation of the Ordinance would impair those interests. Jackson, 282 F.R.D. at 517.

    C.    Adequacy of Representation

The requirement of inadequacy of representation is satisfied "if the applicant shows that representation of his interest 'may be' inadequate; and the

burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 540 n.10 (1972); see also Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003).

Notwithstanding this generally permissive rule, a rebuttable presumption of adequate representation arises where an existing party and the applicant for intervention "share the same ultimate objective," Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011), or where "the government is acting on behalf of a constituency that it represents." Arakaki, 324 F.3d at 1086. Where a presumption of adequate representation arises, the applicant must make a "compelling showing" to the contrary. Citizens for Balanced Use, 647 F.3d at 898.

In evaluating the adequacy of representation, the Court examines three factors,

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 952 (9th Cir. 2009). In analyzing these factors, the adequacy or inadequacy of representation is judged by analysis of the existing parties, not by the qualifications of counsel retained by the

11

parties. See Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 529 (9th Cir. 1983).

    i. Representation by the County

Proposed Intervenors argue that the County may not adequately represent their interests because the County must represent the entire county and its varied interests, including the business and economic interests of Plaintiffs and their employees. (Shaka Motion at 18; CFS Motion at 21-22.) Proposed Intervenors argue that their narrower and more personal interests may be tempered by the County's need to balance regulation with economic and political considerations. They also point out that Mayor Alan Arakawa and the County Council publically opposed the Ordinance. (Shaka Motion at 16; CFS Motion at 18.) They state that the Mayor indicated that the Ordinance is impractical, that it would be impossible to administer, that it "would be a nightmare in this community," and that the County would have to create "a papaya police." (Shaka Motion at 6-7.) Proposed Intervenors also note that, in this case, the County did not oppose Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, but instead stipulated to delay the enforcement of the Ordinance. (Shaka Motion at 17; CFS Motion at 2-3, 18.)

The "assumption of adequacy when the government is acting on behalf of a constituency that it represents" may be overcome where Proposed Intervenors

have "more narrow, parochial interests" than the County and where they "assert[] a personal interest that does not belong to the general public." Arakaki, 324 F.3d at 1086; Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1499 (9th Cir. 1995) (abrogated on other grounds by Wilderness Soc'y, 630 F.3d at 1178). Here, the Shaka and CFS Intervenors have established that their personal interests are sufficiently distinct from the County's general interests. Additionally, because the Mayor and County Council have expressed views that are directly antithetical to those of the Shaka and CFS Intervenors regarding the Ordinance, the Court concludes that Proposed Intervenors meet their burden of showing that the County's representation "may be inadequate." Trbovich, 404 U.S. at 538 n.10 ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); Citizens for Balanced Use, 647 F.3d at 900 ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests.").

    ii. Representation by Proposed Intervenors

  The Shaka and CFS Intervenors each argue that their interests differ enough that the other Proposed Intervenor may not adequately represent its interests in this case. For the most part, the Court finds that Proposed Intervenors share

common interests in that they both participated in the Ordinance's passage (Shaka Motion at 12-13; CFS Motion at 13-14), advertised and educated residents about the Ordinance (Shaka Motion at 13, CFS Motion at 13-14), consist of residents whose health and property interests are impacted by Plaintiffs' GMO crops (Shaka Motion at 18, CFS Motion at 11-12), and seek to protect public health, their property, and the environment (Shaka Motion at 15, CFS Motion at 16). Indeed, Proposed Intervenors "share the same ultimate objective" in defending the validity of the Ordinance. Citizens for Balanced Use, 647 F.3d at 898.

One apparent difference between the intervenor groups is with respect to the issue of abstention. The Shaka Intervenors contend that the Court should abstain from ruling in this matter in light of the state court litigation. The CFS Intervenors, on the other hand, maintain they do not intend to seek a stay of this case or assert abstention as a defense. (CFS Reply at 14-15.) This difference in strategy, however, does not mean that both groups are entitled to intervene. "[M]ere differences in litigation strategy are not enough to justify intervention as a matter of right." Perry, 587 F.3d at 954 (alterations omitted). At the end of the day, the two intervenor groups are likely to make the same or similar arguments on the critical issues of law that will determine the result in this case.

Another difference between the two Intervenor groups is that the five

individuals included in the Shaka Intervenors played a greater role in the initiative process than the CFS Intervenors. They exercised their rights as qualified Maui voters under Maui County Code Article 11 by commencing initiative proceedings, filing a sufficient affidavit, forming the petitioners' committee, and obtaining the requisite petition signatures in support of the Ordinance. In light of their unique role in the initiative process, combined with the fact that the two Intervenor groups share similar interests and will likely make the same legal arguments in support of the Ordinance, the Court finds that the Shaka Intervenors are entitled to party status.

After considering the relevant factors, the Court finds that the Shaka Intervenors satisfy the four-part test to intervene as of right under FRCP Rule 24(a)(2). Their motion was timely, they demonstrate significantly protectable interests that may be impaired by this action, and they have shown that the County may not adequately represent their interests. The Court therefore GRANTS the Shaka Intervenors party status in this case.

With respect to the CFS Intervenors, the Court finds that they have not satisfied the four-part test to intervene as of right. Although their motion was timely and they have protectable interests that may be impaired by this action, they have not made a compelling showing that the Shaka Intervenors – who are now "existing parties" in this case – will not adequately represent their interests. FRCP

Rule 24(a)(2) (allowing intervention as of right "unless existing parties adequately represent that interest"); Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Cal. 1954) ("once intervention has been granted the intervener becomes a 'party'").

II. PERMISSIVE INTERVENTION

The CFS Intervenors alternatively seek permissive intervention. Permissive intervention under FRCP Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353 (9th Cir. 2013). Unlike intervention as of right, "even if all three requirements are satisfied, the district court has discretion to deny permissive intervention." SEC v. Small Bus. Capital Corp., Civ. No. 5:12-03237 EJD, 2014 WL 3749900, at *2 (N.D. Cal. June 29, 2014). In the Court's discretion, it denies the request for permissive intervention since it appears that the Shaka Intervenors will adequately protect the interests of the CFS Intervenors.

III. LIMITATIONS ON INTERVENTION

Plaintiffs ask the Court to impose conditions on the Shaka Intervenors. They ask that the Intervenors adhere to the existing summary judgment schedule. (Opp. at 21.) On this point, the Court notes that it is committed to the schedule that

is currently in place.   Any dispositive motions that are filed will be heard and resolved prior to March 31, 2015.

Plaintiffs also ask that Intervenors be prohibited from filing their own dispositive motions or duplicating arguments made by the County.   (Opp. at 21.) They also want Intervenors to agree to an appropriate protective order and be barred from seeking discovery.   The Court will not impose these conditions on Intervenors.   The Shaka Intervenors are permitted to file and argue their own motions.   Moreover, should there be any disagreement between the parties on the terms of an appropriate protective order or on any discovery issue, the Court expects the parties to meet and confer and make a good faith effort to resolve the dispute without intervention by the Court.   However, if an impasse remains, the Court will be available for an expedited conference to minimize delay, undue burden, and expense.

CONCLUSION

For the foregoing reasons, the Court GRANTS Alika Atay, Lorrin Pang, Mark Sheehan, Bonnie Marsh, Lei`ohu Ryder, and Shaka Movement's Motion to Intervene (Doc. 37) and DENIES Moms on a Mission Hui, Moloka`i Mahi`ai, Gerry Ross, and Center for Food Safety's Motion for Leave to Intervene (Doc. 40).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 15, 2014



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Robert Ito Farm, Inc., et al. v. County of Maui, CIV. NO. 14-00511 BMK, ORDER (1) GRANTING ALIKA ATAY, LORRIN PANG, MARK SHEEHAN, BONNIE MARSH, LEI`OHU RYDER, AND SHAKA MOVEMENT'S MOTION TO INTERVENE AND (2) DENYING MOMS ON A MISSION HUI, MOLOKA`I MAHI`AI, GERRY ROSS, AND CENTER FOR FOOD SAFETY'S MOTION FOR LEAVE TO INTERVENE.