IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT ITO FARM, INC.; HAWAII FARM BUREAU FEDERATION, MAUI COUNTY; MOLOKAI CHAMBER OF COMMERCE; MONSANTO COMPANY; AGRIGENETICS, INC.; CONCERNED CITIZENS OF MOLOKAI AND MAUI; FRIENDLY ISLE AUTO PARTS & SUPPLIES, INC.; NEW HORIZON ENTERPRISES, INC., dba MAKOA TRUCKING AND SERVICES; HIKIOLA COOPERATIVE,<br><br>          Plaintiffs<br><br>vs.<br><br>COUNTY OF MAUI,<br><br>          Defendant<br><br>and<br><br>ALIKA ATAY; LORRIN PANG; MARK SHEEHAN; BONNIE MARSH; LEI`OHU RYDER; and SHAKA MOVEMENT,<br><br>          Intervenor-<br>          Defendants | CIVIL NO. 14-00511 SOM/BMK<br><br>ORDER DETERMINING THAT THE COUNTY OF MAUI GMO ORDINANCE IS PREEMPTED AND EXCEEDS THE COUNTY'S AUTHORITY |
| ALIKA ATAY, et al.<br><br>          Plaintiffs,<br><br>     vs.<br><br>COUNTY OF MAUI; DOW AGROSCIENCES LLC, et al.,<br><br>          Defendants | CIVIL NO. 14-00582 SOM/BMK<br><br>ORDER DETERMINING THAT THE COUNTY OF MAUI GMO ORDINANCE IS PREEMPTED AND EXCEEDS THE COUNTY'S AUTHORITY |

**ORDER DETERMINING THAT THE COUNTY OF MAUI GMO ORDINANCE IS PREEMPTED AND EXCEEDS THE COUNTY'S AUTHORITY**

## I.      **INTRODUCTION.**

Is a County of Maui Ordinance banning genetically engineered ("GE") activities and/or genetically modified organisms ("GMOs") preempted by federal and/or state law?  Does the Ordinance exceed the County's authority?  Those are the questions that the present order addresses.

As this court noted at the hearing on the motions now before the court, none of the motions asks this court to determine whether GE activities or GMOs are good, bad, beneficial, or dangerous.  Nor do the pending motions ask this court to address the value of voter initiatives to adopt laws such as the Ordinance.  The court recognizes the importance of questions about whether GE activities and GMOs pose risks to human health, the environment, and the economy, and about how citizens may participate in democratic processes.  But any court is a reactive body that addresses matters before it rather than reaching out to grab hold of whatever matters may catch a judge's fancy because the matters are interesting, important, or of great concern to many people.  This order is not an attempt by this court to pass judgment on any benefit or detriment posed by GE activities or GMOs.  Notwithstanding the concern that many people have expressed on both sides of these issues, and the visible (and sometimes audible) passion of members of the substantial audiences that have attended hearings in this case, those issues

are not before this court on the present motions, and those who want those issues addressed must seek means other than the present order to accomplish that.

Similarly not before the court at this time is the question of whether it might be a good idea to allow the County to regulate GE activities and GMOs.

The motions now before this court can be ruled on based on an examination of the laws in this area, without regard to political, medical, economic, or other social concerns, as important as those are. Having examined the applicable law, this court concludes that the Ordinance is indeed preempted by federal and state law and does exceed the County's authority. The court therefore declares the Ordinance invalid and unenforceable.

## II.       PROCEDURAL BACKGROUND.

The Ordinance in issue was passed through the initiative process. On November 12, 2014, eight days after the ballot initiative passed, Plaintiffs Alika Atay, Lorrin Pang, Mark Sheehan, Bonnie Marsh, Lei`ohu Ryder, and SHAKA Movement (collectively, "SHAKA"), supporters of the initiative, filed a Complaint for Declaratory Relief in the Circuit Court of the Second Circuit, State of Hawaii. See ECF No. 1-3, PageID # 25 (the "Atay Action").

The following day, November 13, 2014, Robert Ito Farm, Inc., Hawaii Farm Bureau Federation, Maui County, Molokai Chamber

of Commerce, Monsanto Company, Agrigenetics Inc., Concerned Citizens of Molokai and Maui, Friendly Isle Auto Parts & Supplies, Inc., New Horizon Enterprises, Inc., and Hikiola Cooperative, opponents of the initiative, sued the County of Maui by filing the Robert Ito Farm Action in this court. See Robert Ito Farm, Inc. v. County of Maui, Civil No. 14-00511 SOM/BMK, ECF No. 1 (the "Robert Ito Farm Action").

On November 17, 2014, Plaintiffs in the Robert Ito Farm Action and Maui County stipulated, and the court ordered, that the Ordinance not be "published, certified as an Ordinance, enacted, effected, implemented, executed, applied, enforced, or otherwise acted upon until March 31, 2015, or until further order of this Court, in order to allow for adequate time for the parties to brief and argue and for the Court to rule on the legality of the Ordinance as a matter of law." See id., ECF No. 26, PageID # 441.

On December 15, 2014, SHAKA intervened in the Robert Ito Farm Action. See Civ. No. 14-00511 SOM/BMK, ECF No. 63.

On December 30, 2014, Dow Agrosciences removed the Atay Action to this court. See ECF No. 1. Both the Robert Ito Farm Action and the Atay Action have been assigned to this judge. Because the issues raised in the two actions are interrelated, the court rules on both in this single order. Plaintiffs in the Robert Ito Farm Action are referred to collectively in this order

4

as the "Seed Parties," a term the court also uses, given the substantial duplication, to include Defendants other than the County in the Atay Action.

Before the court are several motions. First, on December 17, 2014, the Seed Parties filed a motion for summary judgment in the Robert Ito Farm Action with respect to federal preemption of the Ordinance (First Cause of Action), state preemption of the Ordinance (Second Cause of Action), and alleged violation of the Maui County Charter and related state law (Fourth Cause of Action). See Robert Ito Farm Action, ECF No. 70. That motion is granted in part and denied in part.

Second, on November 21, 2014, SHAKA filed a motion to dismiss or for judgment on the pleadings in the Robert Ito Farm Action, ECF No. 39, arguing that preference should be given to resolving the issues in the Atay Action by a state court. That motion is denied, given the court's determination that the Ordinance is preempted and exceeds the authority granted by the Maui County Charter.

Third, on January 15, 2015, the County of Maui filed a motion to dismiss in the Atay Action. ECF No. 14. The court has previously addressed part of that motion, and now grants the remainder of the motion to dismiss. Because the Ordinance is invalid, SHAKA has no right to be consulted regarding

implementation of it and SHAKA is not entitled to its attorneys'
fees.

Finally, on June 8, 2015, SHAKA filed a motion in the
Robert Ito Farm Action, seeking to be allowed to cross-claim
against the County of Maui to force it to certify the election
results and implement the ordinance.  See ECF No. 161.  That
motion is also denied, given the court's determination that the
Ordinance is unenforceable.

III.      **FACTUAL BACKGROUND.**

On November 4, 2014, "A Bill Placing a Moratorium on
the Cultivation of Genetically Engineered Organisms" (the
"Ordinance") was passed by ballot initiative in the County of
Maui.  See ECF No. 26, PageID # 440.[1]

The Ordinance renders it "unlawful for any person or
entity to knowingly propagate, cultivate, raise, grow or test
Genetically Engineered Organisms within the County of Maui" until
such ban is amended or repealed by the Maui County Council.  ECF
No. 71-4, PageID # 1412.  The Ordinance provides an exception to
the ban on GE organisms for organisms in "mid-growth cycle" at
the time of enactment of the Ordinance.  See id.

The Ordinance contains "Findings," including the
following:

---

[1]Unless otherwise noted, citations refer to the docket in
the Robert Ito Farm Action.

1. The rapid and unregulated growth of commercial agricultural entities engaged in the cultivation and development of GE Organisms threatens the stability and growth of Maui County's agricultural economy, the health of its citizens, and its environment.

.   .   .   .

3. GE Organisms are not a part of the natural environment of Maui County and instead exist in the County as a possible invasive species.

.   .   .

4. The genetic engineering of plants and animals often causes unintended consequences. Manipulating genes via genetic engineering and inserting them into organisms is an imprecise process.  The results are not always predictable or controllable.  Mixing plant, animal, bacterial, and viral genes through genetic engineering in combinations that are not selected for in nature may produce results that lead to adverse health or environmental consequences and threaten Maui County's cultural heritage, Environment and Public Trust Resources.

.   .   .   .

14. The contamination of agricultural products with GE Organisms can have a myriad of significant impacts.  Organic and many foreign markets prohibit GE products and even a single event of Transgenic Contamination can and has resulted in significant economic harm when the contaminated crops are rejected by buyers.

15. Transgenic contamination can and does occur as a result of cross-pollination, co-mingling of conventional and GE seeds, accidental transfer by animals or weather events, and other mechanisms.  Transgenic contamination results in GE crops growing where they are not intended. .  .  .

16. Transgenic contamination prevents farmers and the public from having the fundamental right to choose whether or not to grow crops that are free from GE. . . .

. . . .

18. There are no known or proven scientific methodologies or procedures to recall GE Organisms or remediate/decontaminate the Environment from any damages once GE Organisms are released into the Environment and contamination has occurred.

Ordinance, ECF No. 71-4, PageID #s 1409-10.

The stated purposes of the Ordinance are:

1. to protect Maui County's Environment and Public Trust Resources from transgenic contamination by GE Operations and Practices;

2. to defend and promote the economic integrity of organic and non GE markets that are harmed by transgenic contamination by GE Operations and Practices;

3. to protect Maui County from hazardous aspects of GE Operations and Practices, including but not limited to increased Pesticide use;

4. to preserve the right of Maui County residents to reject GE Operations and Practices based on health-related, moral, or other concerns; and

5. to preserve Maui County's Environment and Public Trust Resources (with its unique and vulnerable ecosystems), while promoting the cultural heritage of the indigenous peoples of Maui and indigenous agricultural Operations and Practices.

ECF No. 71-4, PageID # 1411-12.

Any person or entity violating the Ordinance is subject to civil penalties of $10,000 for the first violation, $25,000 for the second violation, and $50,000 for the third or any subsequent violation. Id., PageID # 1413. Each day that a person or entity is in violation of the Ordinance is considered a separate violation. See id. In addition to civil penalties, "any person or entity, whether as principal, agent, employee, or otherwise, violating or causing or permitting the violation of any of the provisions of [the Ordinance], shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than two-thousand dollars ($2,000.00), or imprisoned not more than one (1) year, or both, for each offense." Id. The Ordinance also authorizes the Director of Environmental Management to enter property to remove GMOs at the violator's expense. Id. There is also a citizen suit provision, allowing private suits to enjoin violations. Id. At the hearing on the motions now before this court, SHAKA conceded that the Ordinance applies not only to the Seed Parties, but also to individuals who have GMO plants in their back yards, including a single GE papaya tree, although SHAKA's counsel said the Ordinance's intent was not specifically to regulate individual homeowners.

Under section 6 of the Ordinance, the County Council may consider amendment or repeal of the "temporary moratorium"

for a specific GE operation or practice if: (1) an Environmental and Public Health Impacts Study ("EPHIS") is completed for that operation or practice; (2) the EPHIS is reviewed by the County Council and citizens, as provided in section 8.2a of the Ordinance; (3) a public hearing is held; (4) at least two-thirds of the County Council votes in favor of amendment or repeal; and (5) the County Council determines that "passage of the amendment or repeal pertaining to such GE Operation or Practice does not result in significant harm and will result in significant benefits to the health of present and future generations of Maui citizens, significantly supports the conservation and protection of Maui's natural beauty and all natural resources."  ECF No. 71-4, PageID # 1412.  Although the second condition listed in the preceding sentence refers to satisfaction of section 8.2a of the Ordinance, there is no section 8.2a in the Ordinance.  Given the impossibility of satisfying all of the listed conditions, the "temporary moratorium" is akin to a ban on GE operations.  Even if the requirement of EPHIS review pursuant to section 8.2a is stricken from the Ordinance, satisfying the requirements appears time-consuming, expensive, and unlikely.

The Ordinance contains a severability clause stating that "[e]very provision in this chapter and every application of the provisions in this chapter are severable from each other," and "[i]f any application of any provision in this chapter to any

person or group of persons or circumstances is found by a court
to be invalid, the remainder of this chapter and the application
of its provisions to all other persons and circumstances may not
be affected."  Id.

**IV.        SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198
F.3d 1130, 1134 (9th Cir. 2000).  Movants must support their
position that a material fact is or is not genuinely disputed by
either "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for the purposes of the motion only), admissions,
interrogatory answers, or other materials"; or "showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
Summary judgment must be granted against a party that fails to
demonstrate facts to establish what will be an essential element

at trial.  See id. at 323.  A moving party without the ultimate
burden of persuasion at trial--usually, but not always, the
defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).

        The burden initially falls on the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,
477 U.S. at 323).  "When the moving party has carried its burden
under Rule 56(c), its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).

        The nonmoving party must set forth specific facts
showing that there is a genuine issue for trial.  T.W. Elec.
Serv., Inc., 809 F.2d at 630.  At least some "'significant
probative evidence tending to support the complaint'" must be
produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv.
Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A
scintilla of evidence or evidence that is merely colorable or not
significantly probative does not present a genuine issue of

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**V.        PRELIMINARY MATTERS.**

Before turning to the merits of the motions, the court examines some initial matters, determining that a Rule 56(d) continuance is unwarranted, declining to strike SHAKA's concise

statement of facts, and determining that the issues presented are ripe for adjudication.

## A. SHAKA's Request for a Rule 56(d) Continuance is Denied.

SHAKA urges this court to defer consideration of the Seed Parties' motion for summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure until completion of discovery. See ECF No. 101, PageID # 2261. That request is denied.

SHAKA says that discovery is needed to present "evidence demonstrating that [the Seed Parties'] bases in asserting federal and state preemption of the Ordinance [are] flawed." ECF No. 102-22, PageID # 2525. According to SHAKA, it needs discovery on the following issues: (1) "[t]he studies and approvals that [the Seed Parties] represent were performed and/or obtained in connection with federal and state oversight of GMO operations being conducted in Maui County"; (2) "[t]he details concerning [the Seed Parties'] GMO operations"; (3) "[t]he health and environmental impacts associated with these operations and practices"; and (4) "[t]he federal and state oversight that is allegedly being carried out with respect to [the Seed Parties'] GMO operations." Id.

Rule 56(d) of the Federal Rules of Civil Procedure provides that, when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary

14

judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The burden is on the party seeking a Rule 56(d) continuance "to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

SHAKA has failed to show that it cannot present facts essential to its opposition. The relevant facts are uncontested, and this court is being asked to determine legal matters. Whether preemption applies can be resolved without further development of the "factual" issues that SHAKA asserts are necessary to defeat preemption. See, e.g., Hotel Employees & Rest. Employees Int'l Union v. Nevada Gaming Comm'n, 984 F.2d 1507, 1513 (9th Cir. 1993) ("Preemption is predominantly a legal question, resolution of which would not be aided greatly by development of a more complete factual record."); Or. Coast Scenic R.R. LLC v. Or., Dep't of State Lands, No. 3:14-CV-00414-HZ, 2014 WL 1572445, at *1 (D. Or. Apr. 18, 2014) (characterizing preemption as a "legal question").

Contrary to SHAKA's assertions, the issues for which discovery is allegedly required are largely, if not completely, irrelevant to its opposition. The "studies and approvals . . .

15

performed and/or obtained in connection with federal and state oversight of GMO operations . . . in Maui County," the "details concerning [the Seed Parties'] GMO operations," the "health and environmental impacts associated with these operations and practices," and the "federal and state oversight . . . allegedly being carried out with respect to [the Seed Parties'] GMO operations" have no bearing on whether the Ordinance is preempted under either federal or state law.  The overarching legal questions relating to federal and state preemption do not, for example, turn on oversight of the Seed Parties' specific operations, on the health and environmental impacts of those operations, or whether GMOs are good or bad.  As important as those matters are, they are not implicated by a challenge to the Ordinance as preempted by federal and state law.

### B. SHAKA's Concise Statement of Facts Does Not Satisfy Local Rule 56.1.

Under Local Rule 56.1(b), any party opposing a motion for summary judgment "shall file and serve with his or her opposing papers a separate document containing a single concise statement that admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  Material facts set forth in the moving party's concise statement "will be deemed admitted

unless controverted by a separate concise statement of the opposing party." Local Rule 56.1(g). "When preparing the separate concise statement, a party shall reference only the material facts that are absolutely necessary for the court to determine the limited issues presented in the motion for summary judgment (and no others), and each reference shall contain a citation to a particular affidavit, deposition, or other document that supports the party's interpretation of the material fact." Local Rule 56.1(c).

The Seed Parties contend that SHAKA's Concise Statement of Facts violates Local Rule 56.1 by generally denying the facts without citation of any evidence and by including immaterial additional facts. See ECF No. 109, PageID #s 2655-56. The court agrees that SHAKA has failed to comply with Local Rule 56.1.

In response to the twenty-four facts set forth in the Seed Parties' Concise Statement, SHAKA merely states that it denies "the factual allegations set forth in Plaintiffs' Concise Statement of Facts." ECF No. 102, PageID # 2304. Neither further explanation nor citation to any particular document is provided. The purpose of a concise statement is to aid this court in determining whether disputed material facts exist, and in identifying the bases for any disputes. Providing this court with a general denial of facts asserted in a moving party's concise statement is insufficient to controvert those facts. See

Coles v. Eagle, Civ. No. 09-00167 LEK, 2014 WL 5089177, at *3 (D. Haw. Oct. 8, 2014) ("A general denial, such as the one [Plaintiff] made in response to [Defendant's Concise Statement of Facts], is not sufficient.").  This is especially so in this case, in which SHAKA has disputed even the Seed Parties' statement that "Defendant County of Maui is a political subdivision of the State of Hawai'i governed by the Constitution of the State of Hawai'i and Hawai'i state laws."  ECF No. 71, PageID # 1391; ECF No. 102, PageID # 2304.

Although this court could, on this basis, deem assertions in the Seed Parties' Concise Statement admitted under Local Rule 56.1(g), the court determines that this is unnecessary.  Even with SHAKA's general denial of all facts in the Seed Parties' Concise Statement, there is no genuine dispute as to any material fact in this case.  As previously noted, preemption is a legal issue that can be resolved without further factual development of the record in this case.  None of the facts cited or controverted by SHAKA establishes that disputed issues of material fact preclude summary judgment.

### C.  This Matter is Ripe for Adjudication.

In its Opposition to the Seed Parties' motion for summary judgment, SHAKA argues that the preemption issues raised in the motion are not ripe for adjudication because the election results have not yet been certified and the Ordinance has not yet

been implemented.  This court has already rejected a similar argument by Maui County concerning SHAKA's claims in the Atay action.  See Atay Action, ECF No. 55, PageId#s 793-95.  Because there is no contention that the County does not intend to certify the election results or that SHAKA itself will decline to attempt to enforce the Ordinance once it has been implemented, the preemption issues discussed in this order are ripe for adjudication.  Before this court is a substantial controversy of sufficient immediacy and reality to warrant a determination that the claims are ripe.  See Montana Environmental Info. Ctr. v. Stone-Manning, 766 F.3d 1184, 1188 (9th Cir. 2014).

VI.        **ANALYSIS.**

        **A.    The Ordinance is Preempted by Federal Law.**

        The Seed Parties argue that the ban on GE organisms, which SHAKA characterizes as a "temporary moratorium," is preempted by federal law.  The court agrees.

        "[F]or the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws."  Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985).

        The Supremacy Clause in the United States Constitution provides:

> This Constitution, and the Laws of the United
> States which shall be made in Pursuance
> thereof; and all Treaties made, or which
> shall be made, under the Authority of the

19

> United States, shall be the supreme Law of
> the Land; and the Judges in every State shall
> be bound thereby, any Thing in the
> Constitution or Laws of any State to the
> Contrary notwithstanding.

U.S. Const. Art. 6, cl. 2.

There are three ways in which state law may be preempted by federal law, U.S. Const. art. VI, cl. 2. The three ways are: (1) express preemption, which exists when Congress has explicitly defined the extent to which its enactments preempt state law; (2) implied field preemption, which exists when state law attempts to regulate conduct in a field that Congress intended federal law to occupy exclusively; and (3) implied conflict preemption, which exists when compliance with both state and federal requirements is impossible, or when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives Congress had. See Indus. Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309 (9th Cir. 1997) (citing English v. Gen. Elec. Co., 496 U.S. 72, 78-80 (1990)); accord Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159, 1164 (9th Cir. 2008) ("Congress has the constitutional power to preempt state law, and may do so either expressly-- through clear statutory language--or implicitly." (citations omitted)). With respect to each type of preemption, "Congressional intent to preempt state law must be clear and manifest." Indus. Truck, 125 F.3d at 1309.

## 1.    The Ordinance is Expressly Preempted Under Federal Law.

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." Hillsborough, 471 U.S. at 712 (quoting Gibbons v. Ogden, 9 Wheat 1, 211 (1824)). "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes." Id. at 713.

The "[p]reemption analysis begins with the presumption that Congress does not intend to supplant state law." Tillison v. Gregoire, 424 F.3d 1093, 1098 (9th Cir. 2005) (internal quotation marks and citation omitted). Accord Cipollone v. Ligget Group, Inc., 505 U.S. 504, 516 (1992) ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress." (alterations, quotation marks, and citation omitted)). When Congress expressly supersedes state legislation by statute, this court's task is to "identify the domain expressly pre-empted." Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769, 1778 (2013). This is because, when Congress enacts a provision expressly defining the preemptive reach of a statute, matters beyond the reach of the provision are not preempted. See Cipollone, 505 U.S. at 517.

"In considering the preemptive scope of a statute,

congressional intent is the ultimate touchstone." Dilts v.
Penske Logistics, LLC, 769 F.3d 637, 642 (9th Cir. 2014)
(internal quotation marks and citation omitted). "'Congress'
intent . . . primarily is discerned from the language of the
pre-emption statute and the statutory framework surrounding it.
Also relevant, however, is the structure and purpose of the
statute as a whole, as revealed . . . through the reviewing
court's reasoned understanding of the way in which Congress
intended the statute and its surrounding regulatory scheme to
affect business, consumers, and the law.'" Id. (quoting
Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996)).

In the First Cause of Action in the Complaint of
November 13, 2014, filed in the Robert Ito Farm Action, the Seed
Parties contend that the Ordinance is expressly preempted by the
Plant Protection Act, 7 U.S.C. §§ 7701 to 7786. The Plant
Protection Act authorizes the Secretary of Agriculture to

> prohibit or restrict the importation, entry,
> exportation, or movement[2] in interstate

---

[2]In 7 U.S.C § 7702(9), "move," "moving," and "movement" are
defined as meaning the following:

> (A) to carry, enter, import, mail, ship, or
> transport;
>
> (B) to aid, abet, cause, or induce the
> carrying, entering, importing, mailing,
> shipping, or transporting;
>
> (C) to offer to carry, enter, import, mail,
> ship, or transport;

commerce of any plant, plant product, biological control organism, noxious weed,[3] article, or means of conveyance, if the Secretary determines that the prohibition or restriction is necessary to prevent the introduction into the United States or the

---

(D) to receive to carry, enter, import, mail, ship, or transport;

(E) to release into the environment; or

(F) to allow any of the activities described in a preceding subparagraph.

[3]In 7 U.S.C § 7702(10), "noxious weed" means "any plant or plant product that can directly or indirectly injure or cause damage to crops (including nursery stock or plant products), livestock, poultry, or other interests of agriculture, irrigation, navigation, the natural resources of the United States, the public health, or the environment."

dissemination of a plant pest[4] or noxious
weed within the United States.

7 U.S.C. § 7712(a).

The Plant Protection Act expressly preempts certain

state laws:

(1) In general

Except as provided in paragraph (2), no State
or political subdivision of a State may
regulate the movement in interstate commerce
of any article, means of conveyance, plant,
biological control organism, plant pest,
noxious weed, or plant product in order to
control a plant pest or noxious weed,
eradicate a plant pest or noxious weed, or
prevent the introduction or dissemination of
a biological control organism, plant pest, or
noxious weed, if the Secretary has issued a
regulation or order to prevent the

---

[4]In 7 U.S.C § 7702(14), "plant pest" means

any living stage of any of the following that can
directly or indirectly injure, cause damage to, or
cause disease in any plant or plant product:

(A) A protozoan.

(B) A nonhuman animal.

(C) A parasitic plant.

(D) A bacterium.

(E) A fungus.

(F) A virus or viroid.

(G) An infectious agent or other pathogen.

(H) Any article similar to or allied with any
of the articles specified in the preceding
subparagraphs.

24

dissemination of the biological control
organism, plant pest, or noxious weed within
the United States.

(2) Exceptions

(A) Regulations consistent with Federal
regulations

A State or a political subdivision of a State
may impose prohibitions or restrictions upon
the movement in interstate commerce of
articles, means of conveyance, plants,
biological control organisms, plant pests,
noxious weeds, or plant products that are
consistent with and do not exceed the
regulations or orders issued by the
Secretary.

(B) Special need

A State or political subdivision of a State
may impose prohibitions or restrictions upon
the movement in interstate commerce of
articles, means of conveyance, plants, plant
products, biological control organisms, plant
pests, or noxious weeds that are in addition
to the prohibitions or restrictions imposed
by the Secretary, if the State or political
subdivision of a State demonstrates to the
Secretary and the Secretary finds that there
is a special need for additional prohibitions
or restrictions based on sound scientific
data or a thorough risk assessment.

7 U.S.C. § 7756(b); see also 7 C.F.R. § 301.1(a) (same).

In other words, with two exceptions, if the Secretary

of Agriculture has issued a regulation or order to prevent the

dissemination of a plant pest or noxious weed, neither Hawaii nor

any of its counties "may regulate the movement in interstate

commerce of any article, means of conveyance, plant, biological

control organism, plant pest, noxious weed, or plant product in

order to control a plant pest or noxious weed, eradicate a plant pest or noxious weed, or prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed."  7 U.S.C. § 7756(b).

On June 16, 1987, the Animal and Plant Health Inspection Service, part of the United States Department of Agriculture, issued a final rule governing "Introduction of Organisms and Products Altered or Produced Through Genetic Engineering Which are Plant Pests or Which There is Reason to Believe are Plant Pests."  52 C.F.R. 22892 (June 16, 1987). Effective July 16, 1987, these regulations were published as 7 C.F.R., Part 340.

These regulations state that "Part 340 regulates, among other things, the introduction of organisms and products altered or produced through genetic engineering that are plant pests or are believed to be plant pests."  7 C.F.R. § 340.0 n.1. Interpreting the regulations, the Ninth Circuit has noted that "a genetically modified organism is regulated as a plant pest if it is created using an organism that is itself a plant pest."  Ctr. for Food Safety v. Vilsack, 718 F.3d 829, 835 (9th Cir. 2013). According to the Ninth Circuit, the Animal and Plant Health Inspection Service "regulates such a genetically engineered organism, referred to by the parties as a 'presumptive plant

pest," until the agency concludes on the basis of scientific evidence that the modified plant is not a 'plant pest.'"   Id.

The regulations implementing the Plant Protection Act prohibit persons[5] from introducing[6] any regulated article[7] unless (1) the Administrator[8] receives notification as required by 7 C.F.R. § 340.3, that the introduction is permitted in accordance with 7 C.F.R. § 340.4, or is conditionally exempt; and (2) the introduction of the regulated article conforms with all other requirements of part 340.   7 C.F.R. § 340.0.

---

[5]"Person" is defined as "Any individual, partnership, corporation, company, society, association, or other organized group." 7 C.F.R. § 340.1.

[6]"Introduce or introduction" is defined as "To move into or through the United States, to release into the environment, to move interstate, or any attempt thereat." 7 C.F.R. § 340.1.

[7]"Regulated Article" is defined as "Any organism which has been altered or produced through genetic engineering, if the donor organism, recipient organism, or vector or vector agent belongs to any genera or taxa designated in § 340.2 and meets the definition of plant pest, or is an unclassified organism and/or an organism whose classification is unknown, or any product which contains such an organism, or any other organism or product altered or produced through genetic engineering which the Administrator, determines is a plant pest or has reason to believe is a plant pest.  Excluded are recipient microorganisms which are not plant pests and which have resulted from the addition of genetic material from a donor organism where the material is well characterized and contains only non-coding regulatory regions."  7 C.F.R. § 340.1.

[8]"Administrator" is defined as "The Administrator of the Animal and Plant Health Inspection Service (APHIS) or any other employee of APHIS to whom authority has been or may be delegated to act in the Administrator's stead."  7 C.F.R. § 340.1.

The Ordinance at issue essentially bans all GE organisms, including those permitted by section 340.0, making it "unlawful for any person or entity to knowingly propagate, cultivate, raise, grow or test Genetically Engineered Organisms within the County of Maui," unless (1) the Ordinance has been repealed or (2) an Environmental and Public Health Study has been completed (and reviewed in accordance with section 8.2.a of the Ordinance, a nonexistent section), a public hearing has been held, at least two-thirds of the County Council votes to allow the GE organisms, and the County Council determines that the GE organism "does not result in significant harm and will result in significant benefits to the health of present and future generations of Maui citizens, [and] significantly supports the conservation and protection of Maui's natural beauty and all natural resources." Ordinance, section 6, ECF No. 71-4, PageID # 1412.

The Ordinance states that the purpose of the ban on GE organisms is to protect against transgenic contamination caused by GE operations and practices; to defend and promote the integrity of organic and non GE markets; to protect from hazardous aspects of GE operations and practices (including pesticide use and testing); to preserve the right of the County to reject GE operations and practices based on health-related, moral, or other concerns; and to preserve Maui County's

environment and public trust resources.  Ordinance, section 4,
ECF No. 71-4, PageID #s 1411-12.

Because the Ordinance bans all GE organisms, with
exceptions for (1) GE crops that "are in mid-growth cycle" when
the Ordinance is enacted; (2) GE organisms incorporated into any
food or medicine "in any manner already prepared for sale for
human or animal consumption;" (3) licensed health practitioners
using GE organisms for diagnosis, care, or treatment; and
(4) fully accredited colleges or universities conducting non-
commercial indoor research or education, the ban directly
conflicts with the regulation set forth in section 340.0 allowing
GE organisms under certain circumstances.

If the Ordinance conflicts with 7 C.F.R. § 340.0, then
the Ordinance's conflicting provisions are preempted pursuant to
7 U.S.C. § 7756(b).  Specifically, § 7756(b) applies to political
subdivisions of a state, such as the County of Maui.  The statute
prohibits the County from regulating the movement (including the
release into the environment) of GE organisms in interstate
commerce, if they are plant pests or noxious weeds.  The Plant
Protection Act includes the express statement that "all plant
pests, noxious weeds, plants, plant products, articles capable of
harboring plant pests or noxious weeds regulated under [the Plant
Protection Act] are in or affect interstate commerce or foreign
commerce."  7 U.S.C. § 7701(9).  Neither of the exceptions

included in § 7756(b) applies, as the ban is not "consistent with
and do[es] not exceed the regulations" and there has been no
showing that the County of Maui received a finding by the
Secretary of Agriculture that there was a "special need" for the
ban.

To determine whether preemption applies, this court
must examine whether GE organisms can be considered either plant
pests or noxious weeds. This court need not look beyond the
language in the Ordinance itself in this regard. The Ordinance's
ban on GE organisms had several purposes, including preventing
"transgenic contamination" and protecting the integrity of
organic and non-GE markets. According to the Ordinance's
findings, controlling GE organisms is difficult once they are
released into the environment. Moreover, the Ordinance says
that, once released, undesirable GE organisms may cross-pollinate
with desirable non-GE organisms. The Ordinance seeks to regulate
GE crops, such as genetically engineered papayas and bananas, to
prevent those crops from "contaminating" or damaging non-GE
papaya and banana crops. In other words, the Ordinance
inherently considers GE organisms to be "noxious weeds" and/or
"plant pests" as defined in 7 U.S.C § 7702(10) and (14).

According to the Ordinance, GE plants directly and
indirectly injure or damage crops, agriculture interests, public
health, and the environment. The Ordinance therefore seeks to

regulate what it sees as a "noxious weed" as defined by federal law.  See 7 U.S.C § 7702(10) and (14) (defining "noxious weeds" and "any plant or plant product that can directly or indirectly injure or cause damage to crops (including nursery stock or plant products), livestock, poultry, or other interests of agriculture, irrigation, navigation, the natural resources of the United States, the public health, or the environment," and defining "plant pest" as any of a number of things that could directly or indirectly injure or damage plants).

As noted above, this court is not deciding the wisdom of regulating GE organisms.  This court is instead examining whether the Ordinance impermissibly seeks to ban GE organisms that are specifically governed by 7 C.F.R. § 340.0.  To the extent the ban conflicts with the federal regulation in section 340.0, the ordinance is expressly preempted by § 7756(b).  This ruling is consistent with this court's previous examination of the County of Hawaii's regulation affecting GE organisms.  In Hawaii Floriculture & Nursery Association v. County of Hawaii, 2014 WL 6685817, *7 to *9 (D. Haw. Nov. 26, 2014), Magistrate Judge Barry M. Kurren, sitting by consent of the parties, determined that a County of Hawaii ordinance imposing restrictions on open air cultivation, propagation, development, and testing of GE crops and plants was preempted by § 7756(b).

In ruling that the Maui Ordinance is expressly preempted by the Plant Protection Act, this court rejects SHAKA's argument that, because the Ordinance has an alleged purpose other than governing "plant pests," preemption is inapplicable.

In Perez v Campbell, 402 U.S. 637, 652 (1971), the Supreme Court ruled that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause," even if the stated objective of the state law has nothing to do with the purposes of the federal law. To hold otherwise "would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy-- other than frustration of the federal objective--that would be tangentially furthered by the proposed state law." Id.

As the Supreme Court noted in Boggs v. Boggs, 520 U.S. 833, 841 (1997), this court "can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of [the federal law at issue] or operates to frustrate its objects." Accord Johnson v. Couturier, 572 F.3d 1067, 1078 (9th Cir. 2009) (quoting Boggs, 520 U.S. At 841); Branco v. UFCW-N. Cal. Employers Joint Pension Plan, 279 F.3d 1154, 1157 (9th Cir. 2002) (same). In other words, even if the Ordinance is not expressly preempted, the Ordinance is preempted if it stands as an obstacle to the accomplishment and execution of the full

purpose and objectives of Congress.  See Arizona v. United
States, 132 S. Ct. 2492, 2505 (2012); Indus. Truck Ass'n, 125
F.3d at 1309.

SHAKA's reliance on Pacific Gas & Electric Co. v. State
Energy Resources Conservation & Development Commission, 461 U.S.
190 (1983), on this point is not persuasive.  In Pacific Gas, the
Supreme Court addressed a California moratorium on construction
of nuclear power plants.  Energy companies challenged the
moratorium, arguing that it was preempted by the federal Atomic
Energy Act.  Id. at 198.  The Atomic Energy Act contained a
preemption provision that preserved state and local power "to
regulate activities for purposes other than protection against
radiation hazards."  Id. at 210 (quoting 42 U.S.C. § 2021(k)).
The Supreme Court noted that any state statute regulating the
construction or operation of a nuclear power plant "would clearly
be impermissible," as it would directly conflict with the federal
government's exclusive authority over plant construction and
operation.  Id. at 212.

While Congress had taken "complete control of the
safety and 'nuclear' aspects of energy generation," it left other
aspects to states.  Id. at 212.  That is, the Atomic Energy Act's
preemption provision still allowed the states to "exercise their
traditional authority over the need for additional generating
capacity, the type of generating facilities to be licensed, land

33

use, ratemaking, and the like." Id.  On the facts presented in Pacific Gas, whether the moratorium was preempted turned on whether it fell within the express preemption provision. Preemption depended on whether the moratorium had a "non-safety rationale." Id. at 213.  Because the California moratorium had an economic rationale, the Supreme Court held that it was not preempted by the federal Atomic Energy Act.  Id. at 223-24.

The situation in Pacific Gas is not analogous to the situation before this court.  Pacific Gas involved a federal reservation of rights to state and local governments for "non-safety purposes" and a state law relating to atomic energy.  The California law did not interfere with federal safety concerns. By contrast, the Plant Protection Act and related federal regulations preclude state or county regulation of plant pests and noxious weeds and is expressly concerned with protecting agricultural interests, natural resources, public health, and the environment.  The broad sweep of the Ordinance in issue here directly overlaps those purposes.

Nor is the court persuaded by SHAKA's argument that, because the Ordinance governs GE organisms only in Maui County, interstate commerce is not affected.  Hawaii consists of islands in the middle of the Pacific Ocean, making it likely that at least some GE organisms are imported from or exported to other places.  SHAKA offers Hector Valenzuela as an expert witness who

says the Seed Parties are conducting GMO experiments in Hawaii. See ECF No. 102-1, PageID # 2314. References to experiments suggest that, if a seed company deems a GMO experiment to be successful, the seed companies may export the GMOs to other counties, states, and countries. There is simply no genuine issue of material fact before this court as to whether the Ordinance regulates the movement of GE organisms in interstate commerce. The Ordinance's complete ban on GE organisms is indicative of a regulation in or affecting interstate commerce. Notably, the preemptive Plant Protection Act applies to states and political subdivisions of states when they regulate movement in interstate commerce. See 7 U.S.C. § 7756(b)(1). The reference to a state's political subdivision evidences a recognition by Congress that a municipality's regulation of plants has an inherently interstate impact. See, e.g., 7 U.S.C. § 7701(9) (all "plant pests" and "noxious weeds" are in or affect interstate commerce).

Maui's ban of GE organisms funs afoul of the Plant Protection Act and its regulations.

## 2. The Ordinance is Also Subject to Implied Conflict Preemption Under Federal Law.

"In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that

Congress left no room for the States to supplement it."

Cipollone, 505 U.S. at 516 (quotation marks and citations omitted).  With respect to implied conflict preemption, the Ninth Circuit has clarified that state legislation is preempted when it is impossible to comply with both state and federal requirements, or when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.  See Indus. Truck Ass'n, 125 F.3d at 1309.  Accord Arizona, 132 S. Ct. at 2505.  With respect to implied preemption, the Seed Parties are contending that the Ordinance conflicts with those laws, not that federal law occupies the field with respect to GE organisms.

The preemptive scope of the Plant Protection Act is governed entirely by its express language.

> When Congress has considered the issue of
> pre-emption and has included in the enacted
> legislation a provision explicitly addressing
> that issue, and when that provision provides
> a reliable indicium of congressional intent
> with respect to state authority, there is no
> need to infer congressional intent to
> pre-empt state laws from the substantive
> provisions of the legislation.  Such
> reasoning is a variant of the familiar
> principle of expression unius est exclusio
> alterius: Congress' enactment of a provision
> defining the pre-emptive reach of a statute
> implies that matters beyond that reach are
> not pre-empted.

Id. at 517 (quotation marks and citations omitted).  Accordingly, because this court has determined that the Plant Protection Act expressly preempts the Ordinance, the court need not determine

36

whether it also impliedly preempts the Ordinance based on actual conflicts between the Ordinance and federal law. The court nevertheless addresses the Seed Parties' implied preemption argument in connection with SHAKA's argument that federal preemption is inapplicable because the Ordinance only seeks to protect public health, safety, and welfare within the County or to protect the County's organic crop industry.

Even if preemption were not express, the Ordinance would still be preempted because it frustrates the purpose of the Plant Protection Act. The ban on GE organisms, some of which are plant pests, causes the Ordinance to run afoul of the Plant Protection Act's purpose of setting a national standard governing the movement of plant pests and noxious weeds in interstate commerce based on sound science. See 7 U.S.C. § 7701.

The Seed Parties contend that, in addition, the Ordinance is impliedly preempted because it conflicts with the EPA's experimental use permits. Monsanto, for example, says that it conducts "authorized regulatory fields trials" in Maui County. See Decl. of Sam Eathington ¶ 7, ECF No. 71-1, PageID # 1401. This court does not rely on this proposition in the present order. This is the kind of argument that would benefit from the additional discovery SHAKA seeks. Without more detail about the EPA's authorization of Monsanto's field trials, the court cannot determine the existence or scope of any conflict. Nor can the

court determine from the record whether and to what extent the EPA has actually authorized GE field trials under the experimental use permitting system set forth in 40 C.F.R., Part 172. Because the court can resolve the federal preemption issue without resolving the Seed Companies' experimental use argument, the court does not reach the experimental use issue.

### B. The Ordinance is Preempted by State Law.

#### 1. The Court Declines to Certify to the Hawaii Supreme Court the Issue of State Preemption.

SHAKA and Amici Curiae ask this court to certify the question of whether the Ordinance is preempted by state law to the Hawaii Supreme Court. See ECF No. 101, PageID #s 2257-61; ECF No. 99, PageID # 2197. The court declines to do so.

Whether to certify a question to a state supreme court is a matter of judicial discretion. See Riordan v. State Farm Mut. Auto. Ins. Co., 589 F.3d 999, 1009 (9th Cir. 2009). This court may certify a question to the Hawaii Supreme Court when: "(a) there is a question concerning Hawaii law; (b) the question is determinative of the cause; and (c) there is no clear controlling precedent in Hawaii judicial decisions." Ill. Nat. Ins. Co. v. Nordic PLC Const., Inc., Civ. No. 11-00515 SOM-KSC, 2013 WL 160263, at *2 (D. Haw. Jan. 14, 2013) (citing Haw. R. App. P. 13(a)). When the law at issue is "reasonably clear such that the court can readily predict how the Hawaii Supreme Court would decide the issue," certification is inappropriate. Id.

(internal quotation marks omitted).

SHAKA contends that the question of whether the Ordinance is preempted by state law is determinative of the case, and that no clear controlling precedent exists in Hawaii decisions.  See ECF No. 101, PageID # 2258.  Regardless of whether that is so, the standards relevant to deciding whether the Ordinance is preempted by Hawaii law are reasonably clear, allowing this court to "readily predict how the Hawaii Supreme Court would decide the issue" without subjecting this case to the delay involved in certifying only the state preemption portion of the case to the Hawaii Supreme Court.  Id. (internal quotation marks omitted); see Haw. Floriculture, 2014 WL 6685817, *10 ("Hawaii appellate opinions have articulated very clear and specific state preemption standards.").  Accordingly, the court declines to certify the state-law preemption issue to the Hawaii Supreme Court.

## 2.    The Ordinance Is Preempted By State Law.

State preemption of municipal ordinances does not function the way federal preemption of state laws functions.  As noted by Magistrate Judge Kurren in Syngenta Seeds, Inc. v. County of Kauai, 2014 WL 4216022, *4 n.7 (D. Haw. Aug. 25, 2014), the majority of jurisdictions follow what is known as Dillon's Rule, named after Judge Dillon, who authored a treatise called "Municipal Corporations."  Dillon's Rule expresses the notion

that a municipal corporation has only the power conferred on **it** by the state.  Id.

By contrast, the relationship between the federal government and the states is not something Congress can entirely control on its own.  That is, the Constitution recognizes states as existing and having certain rights independent of what Congress may do, while "[m]unicipal corporations are solely the creation of the State.  As such they may exercise only those powers which have been delegated to them by the State legislature."  In re Application of Anamizu, 52 Haw. 550, 553, 481 P.2d 116, 118 (1971).

Hawaii has expressly reserved the power to enact laws of general application.  See Haw. Rev. Stat. § 50-15 ("Notwithstanding the provisions of this chapter, there is expressly reserved to the state legislature the power to enact all laws of general application throughout the State on matters of concern and interest and laws relating to the fiscal powers of the counties, and neither a charter nor ordinances adopted under a charter shall be in conflict therewith.").  Hawaii Revised Statutes also provide that

> Each county shall have the power to enact
> ordinances deemed necessary to protect
> health, life, and property, and to preserve
> the order and security of the county and its
> inhabitants on any subject or matter not
> inconsistent with, or tending to defeat, the
> intent of any state statute where the statute
> does not disclose an express or implied

> intent that the statute shall be exclusive or
> uniform throughout the State.

Haw. Rev. Stat. § 46-1.5(13).

Construing section 46-1.5(13), the Hawaii Supreme Court has stated that a county ordinance is preempted by state law when "(1) [the ordinance] covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law." Richardson v. City & Cnty. of Honolulu, 76 Haw. 46, 62, 868 P.2d 1193, 1209 (1994); see also Ruggles v. Yagong, SCWC-13-0000117 (slip op. June 25, 2015) (preempting Hawaii County ordinance giving lowest law enforcement priority with respect to cannabis because it conflicted with state law as discussed in the second prong of Richardson).

The Seed Parties contend that the Ordinance's ban on GE organisms "intrudes into the field of potentially dangerous plant regulation reserved exclusively to the State." ECF No. 70-1, PageID # 1328. They point to numerous state statutes and regulations that they contend demonstrate a comprehensive statewide framework addressing the same concerns underlying the Ordinance's ban on GE organisms, i.e, "the concern that genetically engineered crops may contaminate, injure, or harm non-genetically engineered crops through open air transfer,

uncontrolled spread, and cross pollination."  ECF No. 70-1,
PageID # 1331 (internal quotation marks omitted).

SHAKA, on the other hand, argues that state preemption
is inapplicable because the statutes and regulations cited by the
Seed Parties address statewide concerns about the importation of
plants into the state, while the Ordinance "addresses local
health and safety concerns regarding activities performed within
the County."  ECF No. 101, PageID # 2284.  SHAKA also contends
that no state statute addresses the same subject matter at issue
in the Ordinance, i.e., "the potentially irreversible harms that
GMO operations threaten to impose on agricultural business, the
public health, and the unique environment and natural resources
within Maui County."  Id.  This court addresses each of these
arguments later in this order.

Any ordinance that "conflict[s] with the intent of a
state statute or legislate[s] in an area already staked out by
the legislature for exclusive and statewide statutory treatment"
is preempted by state law.  Richardson, 76 Haw. at 60, 868 P.2d
at 1207 (1994); see also Syngenta Seeds, 2014 WL 4216022.  Accord
Ruggles v. Yagong, SCWC-13-0000117 at 16 (slip op. June 25,
2015).  To determine whether an ordinance impermissibly
legislates in an area of exclusive and statewide statutory
treatment, a "comprehensive statutory scheme" test is applied.
Richardson at 61, 868 P.2d at 1208.  The court first considers

42

whether the municipal ordinance covers the same subject matter as state law.  State v. Ewing, 81 Haw. 156, 161, 914 P.2d 549, 554 (Ct. App. 1996).  If so, the court then determines whether the statutory scheme "disclos[es] an express or implied intent to be exclusive and uniform throughout the state."  Richardson, 76 Haw. at 62, 868 P.2d at 1209; see also Citizens Utils. Co., Kauai Elec. Div. v. Cnty. of Kauai, 72 Haw. 285, 288, 814 P.2d 398, 400 (1991) ("[A] municipal ordinance, which covers the same subject matter embraced within a State statute[,] is invalid if the statute discloses an express or implied intent that the same shall be exclusive, or uniform in application throughout the State.").

Article XI, Section 3 of the Hawaii State Constitution requires the state to "conserve and protect agricultural lands" and vests the state legislature with power to "provide standards and criteria" relevant to that goal.  The legislature has vested the State of Hawaii's Department of Agriculture with authority to oversee the introduction, propagation, inspection, destruction, and control of plants.

Section 141-2 of Hawaii Revised Statutes charges the Hawaii Department of Agriculture with the job of adopting, amending, and repealing rules concerning: (1) "[t]he introduction, transportation, and propagation of trees, shrubs, herbs, and other plants"; (2) "[t]he quarantine, inspection . . .

43

destruction, or exclusion . . . of any . . . seed . . . or any other plant growth or plant product . . . that is or may be in itself injurious, harmful, or detrimental to [the agricultural or horticultural industries or the forests of the State]; and (3) "[t]he manner in which agricultural product promotion and research activities may be undertaken." Haw. Rev. Stat. § 141-2.

The Hawaii Department of Agriculture is also required to designate as "restricted plants" those plants that "may be detrimental or potentially harmful to agriculture, horticulture, the environment, or animal or public health." Haw. Rev. Stat. § 150A-6.1(b). The Hawaii Board of Agriculture, which is the executive board of the Department of Agriculture, is directed to maintain a list of restricted plants that may enter the state only by permit. Haw. Rev. Stat. §§ 26-16(a), 150A-6.1(a).

The Hawaii Department of Agriculture is also authorized to establish criteria and procedures to designate as a "noxious weed" any "plant species which is, or which may be likely to become, injurious, harmful, or deleterious to the agricultural . . . industry of the State and to forest and recreational areas and conservation districts of the State." Haw. Rev. Stat. §§ 152-1, 152-2. The Hawaii Department of Agriculture may adopt rules for the "[c]ontrol or eradication of noxious weeds when deemed economically feasible." Haw. Rev. Stat. § 152-2.

In its Noxious Weed Rules, the Hawaii Department of
Agriculture has established criteria for noxious weeds based on,
among other things, plant reproduction, growth characteristics,
detrimental effects, and distribution and spread.  See Haw.
Admin. Rules §§ 4-68-1, 4-68-4 4-68-5, 4-68-6, 4-68-8.  Those
regulations note the potential characteristics of noxious weeds,
including their "capab[ility] of competing with cultivated crops
for nutrients, water or sunlight."  Haw. Admin. Rules §§ 4-68-4,
4-68-5.  The regulations also note that noxious weeds may have
the following detrimental effects: (1) "severe production losses
or increased control costs to the agricultural . . . industr[y]";
(2) "endangering native flora and fauna by encroachment in forest
and conservation areas"; (3) "hampering the full utilization and
enjoyment of recreational areas including forest and conservation
areas"; and (4) poisoning, injuring, or otherwise harming humans
or animals.  Haw. Admin. Rules § 4-68-6.  Noxious weeds may,
however, be imported for research by permit under state law.
Haw. Rev. Stat. § 150A-6.1.

These statutes and regulations create a comprehensive
scheme addressing the same subject matter as the Maui Ordinance.
The statutes and regulations reflect the authority of state
agencies over the introduction, propagation, inspection,
destruction, and control of plants that may harm agriculture, the
environment, or the public.  The Ordinance bans the cultivation

of GE organisms in light of "serious concerns as to whether GE Operations and Practices . . . occurring in Maui County are causing irreparable harm to the people, Environment, and Public Trust Resources."  Aimed at protecting against transgenic contamination and other "hazardous aspects" of GE operations and practices, the Ordinance seeks to regulate the same subject matter that the state framework addresses.  ECF No. 71-4, PageID #s 1409, 1411-12.

SHAKA contends that the state statutes and regulations at issue address the importation of plants into the state, which is "a statewide concern warranting statewide regulation," while the Ordinance "addresses local health and safety concerns regarding activities performed within the County."  ECF No. 101, PageID # 2284.  But preemption of a county ordinance by state law does not turn on whether the ordinance addresses local, rather than statewide, concerns.

SHAKA also contends that the Ordinance cannot be seen as covering the same subject matter as the statutes and regulations cited above because "[n]o State statutes address whether local governments in Hawai'i are authorized to regulate" the "potentially irreversible harms that GMO operations threaten to impose on agricultural business, the public health, and the unique environment and natural resources within Maui County." ECF No. 101, PageID # 2284.  Preemption is not restricted to

situations in which state statutes specifically mention the authority of local governments over regulation of potential harms from specifically named activities.  See Haw. Floriculture, 2014 WL 6685817, *6 (recognizing County of Hawaii's authority regarding police powers, nuisances, and public trust duties, but stating that that authority does not permit legislation in areas staked out by state legislature for exclusive and statewide treatment); Syngenta Seeds, 2014 WL 4216022, *4-*5 (same). Preemption may occur absent an explicit state pronouncement barring the exercise by local authority in the precise area of regulation at issue.  All that is necessary for state preemption is that a municipal ordinance cover the "same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or . . . conflict[] with state law." Richardson, 76 Haw. at 62, 868 P.2d at 1209.

Amici Curiae make a similar argument, contending that the Ordinance cannot be preempted by state law because no state statute or regulation mentions GE organisms.  See ECF No. 99, PageID # 2193.  Preemption may apply even absent explicit mention of GE organisms in a particular state law.  Here, the scope of various state statutes and regulations reaches GE organisms, and the absence of state laws specifically mentioning or singling out

GE organisms in no way precludes preemption.  See Richardson, 76 Haw. at 62, 868 P.2d at 1209.

Having determined that the Ordinance covers the same subject matter as state law, the court turns to the issue of whether the statutory scheme "disclos[es] an express or implied intent to be exclusive and uniform throughout the state." Richardson, 76 Haw. at 62, 868 P.2d at 1209.  The court concludes that it does.

Both the Hawaii Department of Agriculture and the Hawaii Board of Agriculture are vested with authority over the comprehensive statutory scheme, and state law does not speak to county involvement in rulemaking, oversight, or enforcement relating to that scheme.  At most, representatives from each county sit on the Hawaii Board of Agriculture, which suggests that any county-level involvement is limited to participation in the Hawaii Board of Agriculture's consideration of agricultural issues.  See Haw. Rev. Stat. § 26-16(a).

The chairperson of the Hawaii Board of Agriculture or the chairperson's representative is also part of an advisory committee, along with representatives from the state's Board of Land and Natural Resources, the Office of Environmental Quality Control, and the Department of Health.  The advisory committee advises the Hawaii Department of Agriculture "in problems relating to the introduction, confinement, or release of plants,

animals, and microorganisms" based on knowledge of "modern ecological principles and the variety of problems involved in the adequate protection of our natural resources."  Haw. Rev. Stat. § 150A-10.

Clearly, "the state legislature intended this network of the [Hawaii Department of Agriculture], [Hawaii Board of Agriculture], and the advisory committee to have extensive and broad responsibilities over agricultural problems spanning the various counties to form a coherent and comprehensive statewide agricultural policy."  Haw. Floriculture, 2014 WL 6685817, at *6. The statutory scheme discloses an intent to be exclusive and uniform throughout the state.

Because the Ordinance's ban on GE operations covers the subject matter embraced within a comprehensive scheme of state statutes and regulations intended to be exclusive and uniform throughout the state, the Ordinance is preempted by state law.

Amici Curiae contend that the Ordinance cannot be preempted by state laws that are a mere "patchwork of general agricultural laws" regulating "different, tenuously-related subjects."  Id., PageID #s 2193, 2195.  Calling the laws a "patchwork" because they were not enacted at the same time and are allegedly not all closely related does not negate preemption flowing from the intent and effect of those laws.

Amicus Curiae point to ordinances previously passed by Hawaii County banning GE taro and GE coffee, and by Maui County banning GE taro, contending that the failure of the state legislature to address statewide bans or express disapproval of the ordinances demonstrates the absence of the state's intent for the alleged statutory scheme to be exclusive and uniform throughout the state. Id., PageID #s 2195-96. Legislative silence with respect to pre-existing county bans of GE taro and GE coffee does not prevent this court from examining state laws to determine whether they form a comprehensive statutory scheme intended to be exclusive and uniform throughout the state. Any inference that may be drawn from the lack of prior legislative or judicial action is tenuous, at best. Without any indication that this silence was in fact intentional and designed to signal approval, this court will not infer that the preemptive sweep inherent in the state laws themselves should be ignored.

3. **The Court Does Not Rely on State Pesticide Laws in Concluding that the Ordinance is Preempted.**

The Seed Parties also contend that the Ordinance "intrudes into the field of pesticide regulation reserved to the State" by "banning GE crops in part because of pesticide issues, requiring the EPHIS to extensively study the impact of pesticides, and mandating the Council make findings about the safety of pesticide use." ECF No. 70-1, PageID # 1328.

Although the Ordinance reflects concern about the pesticide use that may be associated with the cultivation of GE organisms, the Ordinance does not truly regulate pesticides. The Ordinance requires any EPHIS to include research and analysis on pesticides, but does not restrict or impose any other requirement on pesticide use, unlike the ordinance at issue in <u>Syngenta Seeds, Inc. v. Cnty. of Kauai</u>, Civ. No. 14-00014 BMK, 2014 WL 4216022 (D. Haw. Aug. 25, 2014), which imposed reporting requirements and pesticide buffer zones. <u>Id.</u> at *1. Any change in pesticide use following implementation of the Ordinance is not a direct result of any provision in the Ordinance, but rather a byproduct of the Ordinance's ban on GE organisms.

Because the Ordinance does not regulate pesticides, it is not preempted by the state pesticide laws cited by Plaintiffs. Although pesticide usage may incidentally be affected by the Ordinance, the court does not base preemption on mere incidental effects on an unregulated subject.

C.    **The Ordinance Exceeds the Authority Delegated to Maui County, as Stated in the Maui County Charter.**

As noted above, counties may only exercise powers delegated to them by a state legislature. <u>See</u> <u>In re Application of Anamizu</u>, 52 Haw. at 553, 481 P.2d at 118; <u>see</u> <u>also</u> Haw. Const. art VII, § 1 ("The legislature shall create counties, and may create other political subdivisions within the State, and provide for the government thereof. Each political subdivision shall

have and exercise such powers as shall be conferred under general laws."); Haw. Rev Stat. § 46-1.5(a) ("Each county shall have the power to frame and adopt a charter for its own self-government . . . .").

The County of Maui has adopted a charter. Section 13-10 of that charter states with respect to punishment for violations of ordinances that the Maui County Council has the power to provide for penalties for violations of ordinances so long as the penalties do not "exceed the amount of $1,000.00, or one (1) year's imprisonment, or both." The penalty provisions in the Ordinance clearly exceed the authorized amount, and have not been authorized by the Maui County Council as stated in the Maui County Charter.

The Ordinance, which was voted on via a ballot initiative, provides for civil penalties of $10,000 for a first violation, $25,000 for a second violation, and $50,000 for any subsequent violation. The Ordinance further states, "In assessing penalties, each day of violation must be considered a separate violation." See Ordinance, section 9, ECF No. 71-4, PageID # 1413. To the extent a violator is prosecuted criminally, violations are considered misdemeanors, punishable by not more than one year in jail and a $2,000 fine. Id. The Ordinance's fine provisions therefore exceed the $1000 maximum fine authorized by the Maui County Charter.

State law also provides that counties have the power to impose civil fines and criminal penalties for violations of county ordinances "after reasonable notice and requests to correct or cease the violation have been made upon the violator." Haw. Rev. Stat. § 46-1.5(24)(A). Although the Ordinance does not provide for such notice and cure, instead saying that the "Department of Environmental Management may assess a civil monetary penalty," this court presumes that that department would comply with state law and not impose penalties without first giving a violator notice of any violation and an opportunity to correct the violation.

In its Answer to the Complaint, Maui County admitted that the "Ordinance contains an invalid fine/penalty under the Charter and state law." See Defendant County of Maui's Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief ¶ 14, ECF No. 56, PageID # 998.

The Ordinance includes a severability provision that provides that, "if any part or application of this initiative is held invalid or unenforceable, the remainder of this initiative shall be construed to have the broadest interpretation allowed by law which would render it valid and enforceable." However, this court cannot simply sever the civil fine provisions without engaging in a legislative function. Unlike the criminal fine provision, which could be reduced to no more than $1,000 to be

consistent with the Maui County Charter, this court cannot simply reduce the civil fine provisions. The Ordinance has a graduated fine provision, providing for increasing fines for subsequent violations. Although the maximum civil fine could be limited to $1,000, it is not at all clear that the maximum fine should be imposed for a first violation, when the Ordinance itself has demonstrated an intent to increase the penalties for subsequent violations. Because this court is not in the business of legislating, the court cannot simply sever the invalid civil fine provisions and instead determines that the civil fine provisions are unenforceable.

**VII.     CONCLUSION.**

The Ordinance is preempted by federal and state law and exceeds the County's authority to impose fines. The court therefore grants summary judgment in favor of the Seed Parties with respect to the First and Second Causes of Action asserted in the Complaint in Civ. No. 14-00511 SOM/BMK. The court grants partial summary judgment with respect to the Fourth Cause of Action asserted in that Complaint, declaring that any criminal fine in the Ordinance exceeding $1000 and all civil fines exceed the County's authority. Given these determinations, the court need not address the Seed Companies' remaining arguments.

Given the court's ruling, the court denies SHAKA's motion to dismiss or for judgment on the pleadings in the Robert

54

<u>Ito Farm</u> Action based on abstention, but grants the remaining parts of the County of Maui's motion to dismiss in the <u>Atay</u> Action. The Clerk of Court is therefore ordered to enter judgment against SHAKA in the <u>Atay</u> Action.

The court notes that, on June 8, 2015, SHAKA filed a motion in the <u>Robert Ito Farm</u> Action, seeking to be allowed to cross-claim against the County of Maui to force it to certify the election results and implement the Ordinance. <u>See</u> ECF No. 161. Because the court has determined that the Ordinance is unenforceable, the court denies that motion.

Finally, the court notes that this order does not discuss the Third Cause of Action in the Complaint in the <u>Robert Ito Farm</u> Action. That claim asserts that the Ordinance violates the Commerce Clause. No later than July 10, 2015, the Seed Parties shall inform the court how they wish to proceed with that claim. If they opt to move to voluntarily dismiss any claim or portion of a claim that this court has not ruled on without prejudice to refiling, the parties should immediately indicate to the court in a written filing whether there is an agreement to the entry of judgment in these cases.

The court stresses again, so that no lay party has any misapprehension on this point, that it is ruling purely on legal grounds. No portion of this ruling says anything about whether GE organisms are good or bad or about whether the court thinks

the substance of the Ordinance would be beneficial to the County.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 30, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District

Robert Ito Farm, et al. v. County of Maui, Civ. No. 14-00511 SOM/BMK; and Alika Atay, et al. v. County of Maui, et al., Civ. No. 14-00582 SOM/BMK; ORDER DETERMINING THAT THE COUNTY OF MAUI GMO ORDINANCE IS PREEMPTED AND EXCEEDS THE COUNTY'S AUTHORITY